## In re SOUTH COAST CO. (two cases).
### Nos. 1075, 1079.

District Court, D. Delaware.
Sept. 12, 1934.

44

Hering & Morris and Josiah Marvel, Jr., all of Wilmington, Del., Murray C. Bernays, of New York City, and Max Swiren, of Chicago, Ill., for debtor and petitioning creditors.

Hugh M. Morris and Ivan Culbertson, both of Wilmington, Del., and Fletcher Lewis, of Chicago, Ill., for intervening bondholders' protective committee.

NIELDS, District Judge.

June 13, 1934, three creditors filed a petition in this court against the debtor under section 77B of the Bankruptcy Act (11 USCA § 207), setting forth that the petitioners "proposed that [the debtor] shall effect a reorganization." Without answering this petition, the debtor, June 18, 1934, filed its petition under the same section setting forth the facts required by the statute and stating that the debtor "desires to effect a plan of reorganization." Attached to the petition is a certified copy of a resolution of the debtor's board of directors authorizing the filing of such petition. Thereupon representatives of a committee of bondholders of the debtor objected to the court approving its petition, and approval was temporarily withheld pending this hearing. June 25, 1934, the committee was granted leave to file a petition of intervention praying that the court enter an order dismissing the debtor's petition because "said petition has not been filed in good faith." The petitioning creditors consent to the approval of the debtor's petition. The two cases, therefore, will be consolidated, and the petition of intervention of the committee treated as applying to both the creditors' and debtor's petition. That good faith is the sole issue before the court was admitted by counsel of the committee at the hearing.

Section 77B, par. (a), 11 USCA § 207, par. (a) prescribes: "Upon the filing of such a petition or answer the judge shall enter an order either approving it as properly filed under this section if satisfied that such petition or answer complies with this section and has been filed in good faith, or dismissing it."

The "good faith" requirement of this section is a requirement that the petition shall be filed with the actual intent and purpose to use section 77B to effect a plan of reorganization. The jurisdictional allegations in a debtor's petition are: The need for relief under the section; insolvency or inability to meet debts as they mature; and a desire to effect a plan of reorganization. These allegations in themselves should satisfy the court that the petition complies with the section and was filed in good faith, in the absence of any proof of bad faith or dishonesty. Doing a thing in good faith is doing it honestly.

In equity, a creditors' bill for the purpose of reorganizing a corporation is deemed filed in good faith when brought for that purpose against a corporation in need of reorganization. When brought with respect to a corporation not in need of reorganization, it is brought in bad faith. First Nat. Bank v. Flershem, 290 U. S. 504, 54 S. Ct. 298, 78 L. Ed. 465, 90 A. L. R. 391. The same holds good with respect to a petition for reorganization in bankruptcy.

The situation in June, 1934, can only be understood by some reference to the past. The debtor is the owner of large sugar plantations and sugar mills for the manufacture of raw and refined sugar in Louisiana. In June, 1930, four years before the institution of these proceedings, the debtor had been placed in receivership in the United States District Court for the Eastern District of

Louisiana, and thereafter had been continuously administered by that court. Throughout 1932 and 1933 efforts were made to reorganize the debtor in the equity proceeding. Finally, in November, 1933, a conference was held at New Orleans attended by representatives of all the various interests. Two general plans of reorganization were considered and a compromise plan agreed upon with the informal approval of the District Judge. A reorganization committee was chosen at the conference. It assigned the task of drafting the detailed plan and agreement of reorganization to counsel. No chairman or secretary was selected. Counsel started to draft a plan, but was advised by the equity receivers that the estimates of available cash upon which the plan was based would have to be revised because the operations of the debtor were below estimates. About February 17, 1934, counsel transmitted to members of the committee and to the attorney of the debtor copies of his completed draft of a plan. In March, 1934, Dahlberg, president of the debtor, wrote to counsel of the committee and to the members of the committee his objections to the draft; in part because it was not in accord with the agreement reached at New Orleans. Meanwhile counsel of the committee drafted an agreement to accompany the plan and transmitted copies of it to the members of the committee and to counsel of the debtor. At the same time counsel of the committee sought to arrange personal conferences with Dahlberg at Chicago to discuss the latter's objections. Realizing that he was not making headway with the reorganization plan, counsel of the committee so reported to the District Judge in New Orleans, suggesting that by another co-operative effort in New Orleans the plan agreed upon at the previous November conference might be put in final shape and formally approved before submission to the security holders. A few days later it was learned that Dahlberg was in New Orleans, and counsel of the committee, accompanied by the receiver of the Celotex Company, arrived there on June 16th for the purpose of a further conference. Counsel of the committee then learned that a creditors' petition under section 77B had been filed in this court, and immediately left New Orleans for Wilmington. Upon arriving here June 18, 1934, he also learned that the debtor's petition had been filed on that day.

The interveners' objections to the debtor's petition center largely about other factors in the situation. Since the winter of 1933, Phœnix Securities Corporation, an investment corporation controlled by Wallace Groves, had purchased $56,500 in bonds of the debtor. Before that time Groves had no interest in the debtor nor in the sugar business. March 22, 1934, Groves came to Chicago to interview one of the members of the committee about the debtor's situation. He requested from counsel of the comittee a copy of his plan. The request was declined because the plan had not been approved either by the committee or the District Judge in New Orleans. Groves revealed that he was in touch with Dahlberg, president of the debtor, and had been shown his copy of the committee's plan. Groves had a plan of his own which he insisted the committee consider, stating that he was opposed to the committee plan. There is proof that thereafter Dahlberg and Groves failed to co-operate with the committee and acted independently. Of the three creditors who filed the petition in this court, one was the investment company of which Groves was president. Without consultation with the reorganization committee or its counsel, Dahlberg brought about the corporate action authorizing the debtor's petition and the filing thereof.

From the facts above recited, the intervening petitioners contend that both the creditors' and debtor's petition were not filed in good faith because there was collusion between Dahlberg, president of the debtor, and Groves with his rival plan, to defeat the plan in the equity proceeding. If by collusion is meant co-operation, the charge is pointless. If by collusion is meant a joint effort to accomplish something other than reorganization, there is nothing in the record to sustain it. All parties are agreed that the debtor requires reorganization. Whether reorganization should be effected in equity or in bankruptcy was a choice of means. In either case the purpose was reorganization. Before the adoption of section 77B, the sole means of reorganization was in equity with its cumbersome incidents and uncertain outcome. The reform effected by the bankruptcy amendment was to provide that a plan approved by the court and acceptable to a certain majority should be compulsory. Its effect has been to supersede equity receiverships incident to reorganizations. Bad faith cannot attach to adopting a course afforded by the Congress.

The plan of reorganization formulated in the receivership proceeding in November,

1933, had made small progress in six months. That plan, of course, may be presented in this proceeding.

██ I find that the debtor's petition was filed in good faith. Good faith being the only issue before the court, it is my duty to approve the petition as properly filed under section 77B.

An order of consolidation and approval of the consolidated petition may be submitted.